UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLOTTE MEJIA,
O/B/O J.E.M.
                                        CIVIL ACTION

VERSUS
                                        NUMBER 10-340-JJB-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY


## NOTICE

     Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Baton Rouge, Louisiana, February 3, 2012.


                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLOTTE MEJIA,
O/B/O J.E.M.
                                        CIVIL ACTION

VERSUS
                                        NUMBER 10-340-JJB-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is a Motion to Supplement the Transcript filed by Charlotte Mejia, on behalf of her minor child J.E.M. Record document number 11. The motion is opposed by defendant Michael J. Astrue, Commissioner of Social Security.[1]

Also before the court is the plaintiff's Motion for Summary Judgment.[2] This motion is brought under 42 U.S.C. § 405(g) to appeal the Commissioner's final decision denying the claim for supplemental security income (SSI) benefits filed on the behalf of J.E.M. Record document number 10. Defendant filed an opposition to the motion and appeal under § 405(g).[3]

## I. Motion to Supplement the Transcript

The Motion to Supplement the Transcript must be addressed

---

[1] Record document number 12.

[2] Charlotte Mejia filed the application on behalf of her daughter, minor child J.E.M. References to "plaintiff" in this report and recommendation are to the claimant, minor child J.E.M.

[3] Record document number 14.

before deciding the plaintiff's appeal of the final administrative decision denying the claim for SSI benefits. Plaintiff moved to supplement the current record with the following evidence: (1) medical records from Earl K. Long Medical Center, including treatment notes and test results which are dated from August 2006 to November 2009;[4] (2) copies of school records from the Central Community School System and East Baton Rouge Parish School System, which are dated from February 2006 to May 2009;[5] and, (3) medical records from Our Lady of the Lake Regional Medical Center, including treatment notes and test results which are dated from February 2009 to November 2009.[6]

Plaintiff argued that the evidence is new because it contains information that was not in the record at the time of the Administrative Law Judge's (ALJ) decision. Plaintiff argued that the evidence is material since it relates to the time period between the application for benefits and the decision denying benefits  Plaintiff argued that there is a reasonable probability the information could change the outcome of the Commissioner's decision because the records undermine the basis for the ALJ's adverse credibility finding. Finally, the plaintiff argued there was good cause for the failure to provide the evidence during the

---

[4] Record document number 11-1.

[5] Record document numbers 11-2 and 11-3.

[6] Record document number 11-4.

administrative proceedings because: (1) at the time of the hearing the doctors were performing an evaluation of the plaintiff's chest pain to determine a course of action, therefore, the evidence could not be produced at the time of the hearing; (2) the ALJ stated at the end of the hearing that he would obtain updated records but did not do so, therefore, he failed to fulfill his heightened duty to fully and fairly develop the record;[7] (3) the Appeals Council also did not obtain any more records, even though it was aware of them based on information from the hearing transcript and the plaintiff's brief; and, (4) the evidence was cited in the plaintiff's brief to the Appeals Council and the plaintiff's attorney assumed the evidence was submitted to the Appeals Council, but it was not received by the Appeals Council.

Defendant opposed the addition of any more evidence in the record, and opposed a sentence six remand for consideration of any new evidence. Defendant relied on the established principle that evidence which is not a part of the administrative proceedings and is initially presented to the district court cannot be considered on judicial review. Defendant argued that the evidence the

---

[7] When the claimant is not represented by counsel at the hearing, the ALJ is under a heightened duty to develop the record and explore all relevant facts. *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986). The failure of the ALJ to develop the record is not, however, grounds for reversal per se. The claimant must also show that she was prejudiced as a result, that is, had the ALJ done his duty evidence would have been adduced that might have altered the result. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984); *Brock v. Chater*, 84 F.3d 726, 737 (5th Cir. 1996).

plaintiff now seeks to present to the court was never submitted to the ALJ or the Appeals Council. Therefore, there is no basis to make it a part of the certified administrative record. Defendant also argued that the new evidence does not satisfy the standards that must be met for a remand under the second clause of sentence six of § 405(g). Assuming for purposes of the motion that the evidence submitted is both new and material,[8] the defendant argued that the plaintiff failed to show good cause for not submitting it for consideration during the administrative proceedings.

It is well established that in cases brought under §405(g), evidence external to the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1,2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Haywood v. Sullivan*, 888 F.3d 1463, 1471 (5th Cir. 1989). It is equally well established that when such evidence is submitted by a party on judicial review, the court considers the evidence only to determine

---

[8] A review of the record shows that several of the documents submitted with the Motion to Supplement the Transcript are already in the administrative record. See, AR pp. 146, 213-17. Defendant also argued in his Memorandum in Response to Plaintiff's Motion for Summary Judgment and Memorandum in Support that some of new evidence was not material because it was cumulative of other evidence already in the record. Record document number 14, p. 5. Nevertheless, the defendant assumed for the purpose of the motion that the evidence is new and material since it relates to the plaintiff's condition during the time period for which benefits were denied.

whether remand is appropriate under sentence six of § 405(g). The applicable portion of sentence six of § 405(g) provides, in pertinent part, that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, under established Fifth Circuit jurisprudence, in order to justify such a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in the original proceeding. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Implicit in the materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later acquired disability, or the subsequent deterioration of a previously nondisabling condition. *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). For new evidence to be material there also must exist the reasonable possibility that it would have changed the Commissioner's determination. *Latham*, 36 F.3d at 483.

In light of these established principles, the court cannot consider on judicial review any evidence submitted by the plaintiff

which is not already contained in the administrative record.  It is undisputed that, with a few exceptions, the evidence attached to the Motion to Supplement the Transcript was not a part of the record at the time of Commissioner's final decision.[9]  Therefore, the court can only review the evidence to determine whether any of it is new and material, and whether there was good cause for the failure to incorporate it into the record during the administrative proceedings.  Plaintiff has the burden of establishing these facts. Review of the record and the new evidence establishes that the plaintiff has not satisfied the burden of demonstrating good cause for the failure to submit the records when her claim was before the Commissioner.[10]

Plaintiff initially argued that there was good cause for the failure to provide the evidence at the administrative level because the ALJ stated at the hearing that he would obtain updated medical records.  Yet, plaintiff argued, the ALJ did not do so and breached his heightened duty to fully and fairly develop the record and make an informed decision based on sufficient facts.  Defendant acknowledged the ALJ's duty to develop the record, but countered that it is not the ALJ's duty to become the claimant's advocate.

---

[9] As noted in footnote 8, several of the documents are already in the administrative record.

[10] *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Since for the purpose of the motion the defendant did not dispute that the evidence is new and material, it is unnecessary to address these two elements.

According to the defendant, it was the plaintiff who failed in her responsibility to provide evidence of her disability and furnish medical evidence of her disabling medical conditions.

Review of the hearing transcript shows that the ALJ discussed the need to obtain records of a cardiologist's evaluation, which was ongoing at the time of the hearing. At the hearing the ALJ initially stated that the plaintiff's mother could obtain the records, or he could write to the source and get the records himself. The ALJ asked the plaintiff's mother to leave the cardiologist's name and address and stated that he would write and obtain the records. Then at the end of the hearing the ALJ stated that he was going to get the "heart records" and study them and "make a decision in your case after I've done that." AR pp. 42, 47, 49-52. Yet, the record does not show that the ALJ either obtained the evidence after the hearing or reviewed the evidence before rendering his decision denying the claim for benefits.[11] Thus, the ALJ's statements at the hearing support the conclusion that the ALJ failed to fully develop the record.

But this conclusion does not the end the court's inquiry. Plaintiff must also show that she was prejudiced as a result. To the extent the ALJ did not obtain records related to the plaintiff's cardiology evaluation, the record does not support a

---

[11] The Commissioner acknowledged in the Defendant's Response that the current administrative record does not contain the results of the cardiologist's evaluation. Record document number 14, p. 3.

finding that the plaintiff was prejudiced by the ALJ's failure to obtain these records. The report show that the plaintiff's EKG was normal, no restrictions were placed on the plaintiff's activities because of any heart condition, and there was no need for cardiac follow up.[12]

Moreover, as pointed out by the defendant, even if the ALJ erred by not acquiring updated evidence, the plaintiff cannot rely on this to establish prejudice or good cause for the failure to submit the additional records when the case was still under administrative review. The record establishes that approximately two months after the ALJ hearing and decision, the plaintiff obtained representation to pursue review of the ALJ's decision by the Appeals Council.[13] The October 29, 2009 letter from the Appeals Council to the plaintiff's attorney enclosed copies of the exhibits and recording of the hearing, and explained the process for submitting new and material evidence and a statement about the facts and the law in the case. AR p. 6. The record reflects that on December 7, 2009 the plaintiff's attorney sent a brief to the Appeals Council in a six page facsimile transmission . The brief itself was dated December 4, 2009. AR pp. 156-61. In the "Statement of the Case" portion of the brief the attorney included

_____

[12] Record document number 11-1, pp. 95-96.

[13] The record shows that the plaintiff obtained counsel on August 6, 2009. AR pp. 6-13.

8

22 notations indicating that the evidence referred to was
"Enclosed." However, there is no indication from the transmission
that the evidence cited was actually enclosed or otherwise sent
with the brief. The transmission cover page stated that only six
pages were sent, which was the cover page and the five page brief.[14]

The Appeals Council directly addressed this discrepancy in its
March 18, 2010 denial of the plaintiff's request for review. In
the third paragraph, under "What We Considered," the Appeals
Council noted that the attorney's December 4 letter made reference
to additional evidence enclosed, but that no additional evidence
was submitted in connection with the request for review. The
Appeals Council stated further that on March 15, 2010 the
attorney's office was contacted by telephone and confirmed that no
additional evidence was submitted with the request for review. AR
p. 2.

Thus, it is apparent from the record that there was some error
which caused the new and material evidence - evidence that was not
before the ALJ at the time of his decision - to not be forwarded to
the Appeals Council so it could be considered as part of the review
of the ALJ's findings. The only reasonable conclusion from the
undisputed facts in the record is that the plaintiff's attorney is

---

[14] The record establishes that the evidence referred to in the
attorney's brief to the Appeals Council is the same evidence
submitted in connection with the plaintiff's Motion to Supplement
the Transcript. This evidence totals 186 pages. AR pp. 157-61;
record document numbers 11-1 through 11-4.

responsible for this error. This conclusion is reinforced by the Appeals Council's statement that the attorney's office confirmed that no additional evidence was submitted, and the fact that in the Motion to Supplement the Transcript no explanation at all was offered for why the new evidence was not submitted to the Appeals Council. The statement it was "assumed submitted to the Appeals Council" but not "received by the Appeals Council" begs the question. It does not provide any facts which would explain how this happened or why the omission was not timely corrected.

Consequently, there is no factual basis to support a finding of good cause for the plaintiff's failure to incorporate the new evidence into the record during the administrative proceeding. An unpublished decision from the Fifth Circuit, and other cases in the district courts, also indicate that an unexplained error by an attorney which causes evidence not to be submitted during the administrative proceedings does not establish the good cause necessary for a sentence six remand.[15]

---

[15] *See*, *Skalij v. Chater*, 103 F.3d 126 (5th Cir. 1996)(claimant must provide excusable explanation for not submitting the records earlier in proceeding; explanation that records were misfiled in her attorney's office insufficient to demonstrate "good cause"); *see also*, *Benton v. Astrue*, 2010 WL 3419276 (D.S.C. April 28, 2010), report and recommendation adopted by, 2010 WL 3419272 (D.S.C. Aug. 30, 2010), aff'd by, 2011 WL 3930407 (4th Cir. Sept. 8, 2011)(clerical or attorney error in attorney's office not considered good cause for remand under second clause of sentence six); *Shuter v. Astrue*, 537 F.Supp.2d 752, 759-60 (E.D. Pa. 2008); *Skorupski v. Commissioner of Social Sec.*, 2010 WL 548697 (W.D. Mich. Feb. 10, 2010).

In summary, on judicial review the court cannot consider the additional evidence submitted by the plaintiff, and the evidence does not satisfy the requirements for a "new evidence" remand under sentence six of § 405(g).  Plaintiff's Motion to Supplement the Transcript is unsupported and should be denied.

## II. Appeal of the Commissioner's Decision

### A. Standard of Review and Applicable Law for Appeal under § 405(g)

The court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).  If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Harris*, *supra*.  In applying the substantial evidence standard the

court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner, not the court, to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner's failure to apply the correct legal standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed are grounds for reversal. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Effective August 22, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 changed the law for determining disability in childhood disability SSI cases. Essentially, the changes eliminated the fourth step which required the Commissioner to complete an individualized functional assessment to determine whether a child's impairments were comparable in severity to those which would disable an adult.

Under the applicable statute and regulations, an individual under the age of 18 is considered disabled if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *Harris*, 209 F.3d at 418. A three step sequential analysis is used to evaluate claims for children's SSI benefits. These steps are: (1) Is the claimant engaged in substantial gainful activity? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the claimant's impairment meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1? 20 C.F.R. § 416.924(a)-(d).

At the third step, if a claimant's impairments do not meet or medically equal any listing, a determination is made as to whether the impairments result in limitations that functionally equal a listing. 20 C.F.R. § 416.926a(a). Functional equivalency requires consideration of how the claimant functions in terms of six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do. The six domains are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A claimant's impairments functionally equal the listings if they are of listing-level severity. Impairments are of listing-level severity if the claimant has marked limitations in two domains, or an extreme

limitation in one domain.  20 C.F.R. § 416.926a(d).

Limitation in a domain is "marked" when impairments interfere seriously with the claimant's ability to independently initiate, sustain, or complete activities.   Daily functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities.  Marked limitation is more than moderate, but less than extreme.  Extreme limitations in a domain occur when a claimant's impairments interfere very seriously with the ability to independently initiate, sustain or complete activities.  An extreme limitation means more than marked, and is also the rating given to the worst limitations.   However, it does not necessarily mean a total lack or loss of ability to function.   20 C.F.R. § 416.926a(e)(2)(i) and 3(i).

## B. Background and Analysis

Plaintiff was ten years of age at the time of this appeal. An application for children's SSI benefits was filed on her behalf in August 2007.  The application alleged disability beginning in July 2006 due to epilepsy and attention deficit hyperactivity disorder (ADHD).  AR pp. 77-79.  The application was denied and the plaintiff requested a hearing before an ALJ.  AR pp. 53-58.  A hearing was held before the ALJ on January 28, 2009 and the ALJ issued a decision denying benefits on June 11, 2009. AR pp. 18-52. The ALJ found at the second step that the plaintiff had severe

impairments - attention deficit hyperactivity disorder (ADHD) and epilepsy. However, he determined at the third and final step that the impairments did not meet any of the listed impairments found in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, Appendix 1, Part B, nor did they medically or functionally equal a listed impairment. AR pp. 21-27. The Appeals Council denied the plaintiff's request for review on March 18, 2010 and the decision of the ALJ became the final decision of the Commissioner. AR pp. 1-5.

In her appeal the plaintiff argued that: (1) the ALJ breached his duty to fully and fairly develop the administrative record; (2) substantial evidence does not support the finding that the plaintiff's impairments do not meet or medically equal Listing 111.02; and, (3) substantial evidence does not support the finding that the plaintiff's impairments do not functionally equal a listed impairment. Review of the administrative record as a whole demonstrates that the plaintiff's claims of error are unsupported and substantial evidence supports the ALJ's findings.

Plaintiff's claim that the ALJ failed in his duty to develop the administrative record has already been addressed in the context of plaintiff's Motion to Supplement the Transcript. Both sides essentially made the same arguments on this issue in connection with the appeal. Again, the plaintiff's arguments are unpersuasive. Even if the record supports a finding that the ALJ failed in his duty to obtain the records before he issued his

decision, the plaintiff cannot establish prejudice from this error, i.e. that had the ALJ done so evidence would have been obtained which might have altered the result.[16]

Plaintiff generally argued that prejudice is established because the records the ALJ did not obtain provide objective support to her statements concerning her symptoms, which the ALJ found not fully credible.[17] This argument is unpersuasive. Obviously, the ALJ could only get the cardiology evidence, and any other records, that existed through the end of May 2009.[18] As previously stated, the plaintiff's cardiac evaluation/test results were normal, there were and no restrictions, and no treatment or follow up was ordered. To the extent the plaintiff contended that other records were not obtained, the plaintiff did not point out

---

[16] "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock*, *supra*.

[17] On the issue of credibility, the ALJ concluded:
After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not supported by the weight of the evidence to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings....
AR p. 22.

[18] The ALJ hearing was held on January 28, 2009 and the ALJ issued his decision approximately four and one-half months later on June 11, 2009.

any specific information in them that might have led to a different finding on credibility or disability. Finally, there is no basis to conclude that the plaintiff was prejudiced by the ALJ's actions when the plaintiff's attorney subsequently failed to provide the evidence to the Appeals Council so that it would be considered during the administrative proceeding.

Contrary to the plaintiff's arguments, substantial evidence also supports the ALJ's findings that the plaintiff's severe impairments do not satisfy the requirements of Listing 111.02 (Major motor seizure disorder), and do not functionally equal a listed impairment.

Plaintiff argued that the objective evidence in the record establishes that her combined epilepsy and ADHD impairments meet or medically equal Listing 111.02A. or 111.02B. In support of the argument the plaintiff cited various pages of the administrative record and made conclusory assertions that the evidence cited met the listing requirements.[19] This evidence does support the plaintiff's diagnosis of epilepsy and ADHD. But it is not apparent from a review of the evidence itself how it demonstrates seizures of the type and frequency required by the listing, or meets any of the other criteria that must accompany the seizure activity. Nor did the plaintiff explain how this evidence does so. The ALJ's

---

[19] Record document number 10-2, Plaintiff's Brief in Support of Appeal, pp. 18-19.

findings, however, are clearly supported by the testimony of Dr. George Smith, the medical expert who testified at the administrative hearing, and the report of the state agency medical consultant. Both concluded after a review of the evidence that the plaintiff's combination of impairments did not meet Listing 111.02.[20]

On the question of functional equivalence, the plaintiff disputed the ALJ's findings in the domains of acquiring and using information, maintaining attention and completing tasks, and health and physical well-being.[21] Plaintiff argued that because the evidence establishes, at a minimum, that she has marked limitations in these three domains the ALJ should have found her disabled based on functional equivalence, which requires marked limitations in only two domains.

Review of the record shows that in making findings in each domain of functioning the ALJ considered all the evidence. The ALJ decided to rely on certain portions of the medical and school records, as well as the opinions of the state agency consultant and medical expert who testified at the hearing. The records and opinions relied on by the ALJ constitute substantial evidence to

---

[20] AR pp. 46-49, 236-41.

[21] Plaintiff did not contest the ALJ's findings that the plaintiff had a less than marked limitation in interacting and relating with others and no limitations in caring for herself, or moving about and manipulating objects.

support the conclusion that the plaintiff had no limitations in acquiring and using information and less than a marked degree of limitation in maintaining attention ("Attending"[22]) and completing tasks.[23]

Plaintiff essentially argued that the ALJ erred by improperly weighing the evidence and relying on evidence from the medical expert Dr. Smith, and the state agency medical consultant. According to the plaintiff, the ALJ should not have relied on Dr. Smith or the consultant's evaluation. Rather, plaintiff argued, the ALJ should have credited the information in the school evaluation completed by the plaintiff's teacher in August 2007.[24]

---

[22] AR. p. 23.

[23] Plaintiff stated that the ALJ found no limitation in the domain of maintaining attention and completing tasks. Record document number 10-2, Memorandum in Support of Appeal, p. 23. This statement is incorrect. The ALJ determined that the plaintiff had less than marked limitation in maintaining attention and completing tasks. As noted by the ALJ, this finding is consistent with the testimony of Dr. Smith and the finding of the state medical consultant. AR pp. 24, 49, 238.

[24] AR pp. 107-114 (second grade teacher evaluation completed August 31, 2007). Plaintiff complained that the ALJ should not have relied on the consultant because he gave his opinion in September 2007 without the benefit of all the evidence. Yet, the record shows that the teacher evaluation which the plaintiff argued demonstrates greater limitations than found by the ALJ was completed just one month after the August 2007 review of the state agency medical consultant. This example illustrates the established principle that on judicial review the court cannot second guess the ALJ in his role as the fact finder. It is his duty to review and weigh all the evidence, and to resolve any conflicts in the evidence. The court cannot assume this role and substitute its own judgment for that of the ALJ.

This argument is not a basis for reversing the ALJ's decision. It is the role of the ALJ, as the fact finder, to consider and weigh all the evidence. On judicial review the court cannot reweigh the evidence or make and substitute its own findings. When the ALJ's findings are supported by substantial evidence in the record as a whole they must be affirmed. A review of the record as a whole establishes that there is such evidence here. The fact that the plaintiff can point to other evidence in the 2007 teacher evaluation to support her claim does not establish error or that the decision was not supported by substantial evidence.[25]

Furthermore, judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal.[26] Thus, the plaintiff's arguments fail to demonstrate that the findings of the ALJ in these areas of functioning contain legal errors or lack substantial evidence in the record as a whole.

In the domain of health and physical well-being the ALJ concluded that the plaintiff has less than marked limitations. This finding is consistent with the assessment of the state agency medical consultant. The ALJ also noted that the plaintiff's

---

[25] *See*, *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254, n.4 (5th Cir. 1972); *Haley v. Massanari*, 258 F.3d 742, 746 (8th Cir. 2001).

[26] *Id.*

treating sources had not placed any restrictions on her activities, and the records contained no evidence of somatic complaints or side effects from her medication regimen. Plaintiff merely cited the regulation related to this domain[27] and argued that the records show increased seizures despite increases in medication and a school health plan designed to minimize the risk of injury during seizures. According to the plaintiff, this evidence undermines the ALJ's finding and establishes at least that she has a marked limitation in health and physical well-being. Yet, the plaintiff did not cite any specific evidence in the record to support these arguments.

Again, the plaintiff's unsupported assertion that other evidence in the record supports her position does not demonstrate any error or a lack of substantial evidence to support the ALJ's finding in this domain.

## C. Summary

In summary, the ALJ's determination that the plaintiff's severe impairments do not meet, medically equal, or functionally equal in severity a listed impairment complied with the proper legal standards and was supported by substantial evidence in the record as a whole. The decision of the Commissioner should be affirmed.

---

[27] 20 C.F.R. § 416.926a(1)(3).

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Motion to Supplement the Transcript filed by Charlotte Mejia, on behalf of her minor child J.E.M., be denied.

It is further recommended that the Motion for Summary Judgment filed by Charlotte Mejia, on behalf of her minor child J.E.M., considered as an appeal the Commissioner's final decision denying the claim for children's Supplemental Security Income benefits be denied, and that judgment be entered in the defendant's favor affirming the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g).

Baton Rouge, Louisiana, February 3, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE